# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**MACON McCLINTON,**

                **Plaintiff,**

**-vs-**                                 **Case No.  6:04-cv-1422-Orl-18DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

                **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on review of the decision of the Defendant to deny Plaintiff's application for Social Security benefits.  For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **AFFIRMED.**

### PROCEDURAL HISTORY

      Plaintiff applied for a period of disability, disability insurance benefits, and Supplemental Security Income, alleging disability beginning August 12, 2001 (R. 58, 330).  The applications were denied initially and upon reconsideration, and Plaintiff requested and received an administrative hearing (R. 42, 45, 321, 326, 334).  At the hearing, Plaintiff amended his alleged onset date to December 1, 2001 (R. 336).  On April 27, 2004, the administrative law judge ("the ALJ") issued a decision denying Plaintiff's claims (R. 15).  The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (R. 5).  This action followed.

### NATURE OF DISABILITY CLAIM

Plaintiff claims disability due to "bad back – lumbar sprain–bulging L1-L3" and depression (R. 94).

### SUMMARY OF EVIDENCE BEFORE THE ALJ

Plaintiff was thirty-four years old at the time of the ALJ's decision (R. 19, 58), with a tenth or eleventh grade education and past relevant work experience as a restaurant worker, nurse's aide, retail store worker, and construction worker (R. 19, 85-92, 95, 337, 342-43).

The medical evidence is set forth in the ALJ's decision. By way of summary, the relevant medical records[1] indicate that Plaintiff suffered a right groin pull on August 12, 2001 (R. 144-45, 330). Plaintiff was seen at the Emergency Department, prescribed pain medication, was placed off work for three days, and placed on light duty for an additional week (R. 145).

On September 25, 2001, Plaintiff returned to the emergency room, complaining of low back pain (R.141-142). X rays showed no evidence of fracture or dislocation. On examination, Plaintiff reported subjective tenderness, but the doctor noted that "there was no palpable pain that I could appreciate." (R. 141).

On October 5, 2001, x-ray of the lumbar spine revealed "very mild degenerative disc disease, otherwise, unremarkable examination of the lumbar spine." (R. 166). X-rays of the pelvis and hip dated October 15, 2001 were normal (R. 171).

On October 15, 2001, Plaintiff presented to orthopedist Mark Gillespy, M.D., for evaluation of his back and hip pain (R. 169-72). On examination, Plaintiff had some muscle spasm and displayed

---

[1]The administrative record includes medical records dating back to1996. As the alleged onset date is December 2001, the ALJ began his review with records dating from August 12, 2001 (R. 20). Plaintiff has not objected and the Court finds no error in the ALJ limiting his review to only evidence pertinent to the alleged onset of disability, forward.

some reduced range of motion, with tenderness, but he had normal strength despite mild give-way weakness, no sensory deficits, and normal range of motion in all of the joints (R. 170-71).  Dr. Gillespy diagnosed a strain and radiculopathy and recommended an MRI scan (R. 171-72).  It was noted that Plaintiff could return to work with no lifting of more than twenty pounds and no repetitive bending, lifting, or stooping (R. 172).

On November 7, 2001, Plaintiff returned to Dr. Gillespy (R. 167).  The doctor noted that an MRI scan was taken on October 31, 2001, which showed a slight bulging of the disc at L2-3, and minimally at L4-5 (R. 167, 307-08).  Dr. Gillespy specifically noted that the scan revealed no evidence of disc herniation, and was identical to an MRI taken March 3, 2000, which showed no significant nuerocompressive pathology (R. 167, 175, 307-08).  Plaintiff again displayed reduced range of motion in his spine on examination, but Dr. Gillespy felt: "At this juncture I do not see anything to suggest a significant work injury here." (R. 167).  Dr. Gillespy noted that Plaintiff's symptoms were no different from his complaints in 2000, and that Plaintiff was at maximum medical improvement, with no permanent impairment (R. 167-8).  Dr. Gillespy concluded that Plaintiff could lift up to forty pounds, and that Plaintiff "needs no further follow-up care for his lumbar spine condition." (R. 168).

In January 2002, a state agency physician reviewed the medical records and completed a Physical Residual Functional Capacity Assessment that found Plaintiff to be capable of the exertional demands of light work (R. 190-97).

Plaintiff presented to the emergency room on April 21, 2002, for back pain (R. 200).  On examination, he had no visible spasm, and generalized tenderness.  No neurologic deficits were noted.

X-rays of the lumbar spine were unremarkable (R. 201), with some minimal osteoarthritic changes (R. 202).  Diagnosis was lumbar muscle strain (R. 201).

On April 22, 2002, Plaintiff presented to Dr. Robert Sessoms, and was assessed with chronic lower back pain (R. 207).  Plan was to obtain an MRI of the lumbar spine.  *Id.* [2]

On May 2, 2002, Plaintiff underwent a psychological consultative examination (R. 203-04). Plaintiff described his current situation of a depressed mood, and reported that he can do a few household chores such as preparing a simple meal or washing dishes (R. 203).  Daily activities included watching TV, listening to music, playing video games, taking naps, collecting model cars, and caring for his pet iguana.  He reported that he tries to walk for exercise and can drive and shop for himself (R. 203-04).  Plaintiff was able to recall 5 digits forward and 4 digits backward.  Plaintiff's memory and concentration were estimated to be mildly to moderately impaired.  Plaintiff was assessed with adjustment disorder with mixed anxiety and depressed mood (R. 204).

On May 10, 2002, a state agency psychiatrist completed a psychiatric review technique form, finding that Plaintiff's affective disorder was not severe, and resulted in only mild difficulties in functioning (R. 208-21).

On July 10, 2002, Plaintiff presented to the emergency department for back pain and cold symptoms (R. 227).   He was assessed with an upper respiratory infection and chronic back pain.

---

[2]Plaintiff cites in his brief: "On May 3, 2002, [he] underwent a MRI examination, and was diagnosed with a herniated disc.  (Transcript 205)."  The administrative record, however, contains no such report or diagnosis at the cited page.  Rather, page 205 is an order form or prescription for an "appointment date" of May 3, 2002 for an MRI, signed by the "ordering physician," Dr. Sessoms.  The inclusion of "herniated disc" on the order form is not equivalent to a medical finding of a herniated disc; rather, it is a justification for the MRI to rule out a herniated disc.  Indeed, Dr. Sessoms treatment notes do not contain such a diagnosis, finding only chronic low back pain.  No MRI report of May 3, 2002 is found in the administrative record.

Plaintiff returned to Dr. Sessoms on August 1, 2002, this time complaining of hip pain (R. 276).  Assessment was chronic low back pain, and plan was to undergo an MRI and x-rays of the hips.

On August 2, 2002, a state agency clinical psychologist completed a psychiatric review technique form finding that Plaintiff's affective disorder was not severe, and resulted in only mild difficulties in functioning (R. 229-42).  That same day, a state agency physician completed a residual functional capacity assessment and determined that Plaintiff could occasionally lift 20 pounds, frequently lift 10, could stand and walk for six hours in an eight hour day, and sit for six hours in an eight hour day (R. 244).

On August 6, 2002, Plaintiff underwent x-rays of his hips, which were "completely normal" (R. 274-75).  Plaintiff also underwent the requested MRI of the lumbar spine (R. 272-73).  Impression was "degenerative disc disease most pronounced at L2/3 where there is also anterior and posterior protrusion of disc material.  Neural foraminal narrowing at L5/S1 and to a lesser degree L4/5." (R. 272).

On August 21, 2002, Plaintiff presented to Hatch Orthopedics, where Dr. Robert Hatch assessed him with chronic low back pain, and administered injections (R. 267).  Plaintiff returned to Dr. Hatch on September 10th for additional injections (R. 263-64).  On September 24, 2002, Plaintiff returned, complaining of back and neck pain (R. 261).  Assessment continued to be chronic low back pain/neck pain, and it was noted that the etiology was unclear.  Dr. Hatch noted: "Macon has pain out of proportion to physical exam and diagnostic studies." (R. 260).  Physical therapy was prescribed, to focus on functional goals (R. 260- 262).

On October 17, 2002, Plaintiff presented to the emergency department, complaining of back pain (R. 306).  On examination, Plaintiff was sore, with no sensory or motor deficits.  It was noted

that he could stand and ambulate, without impairment.  Diagnosis was back strain.  Medication, heat and rest were prescribed, and Plaintiff was to follow up with his physician.  *Id.*  There is no indication that Plaintiff did follow up with Dr. Hatch in October.

Plaintiff returned to the emergency department on November 24, 2002, complaining of back pain (R. 304).  Again, examination revealed soreness, with no motor/sensory deficits, and Plaintiff was noted to be able to stand and ambulate.  Chronic back pain was diagnosed, and an injection was administered.  *Id.*  Plaintiff was again directed to follow-up with his private physician.

Plaintiff returned to Dr. Hatch on January 3, 2003, noting an exacerbation of his pain upon doing heavy labor (R. 256).  Assessment continued to be chronic low back pain.  Two days of bed rest were prescribed, along with continued conservative treatment via medications and physical therapy.

Plaintiff presented to the emergency room again on January 16, 2003, after a fall (R. 300). X rays taken of Plaintiff's lumbar spine of January 13, 2003, revealed mild degenerative change, with no evidence of injury (R. 302).  Lumbar strain/contusion was diagnosed.  Plan was pain medication, ice and heat.

Plaintiff returned to the emergency room on March 3, 2003, complaining of back pain (R. 297).  On examination, Plaintiff reported to be sore, but had full function and range of motion of upper and lower extremities without any acute motor or sensory deficits.  *Id.*  Diagnosis was back pain, muscle spasm, and Plaintiff received an injection and pain medication. Referral was made to a private physician for follow-up, but there is no indication that Plaintiff returned to Dr. Hatch.

On June 9, 2003, Plaintiff again presented to the emergency department, complaining of neck and back pain (R. 295).  Diagnosis was muscle spasm and chronic low back pain.  Again, Plaintiff

received prescription pain medication, and an injection.  Again, Plaintiff was referred to his physician for follow-up, but did not follow through.

On August 17, 2003, Plaintiff presented again to the emergency department, complaining of acute back and neck spasms (R. 292-93).  The treatment notes state that Plaintiff "works locally as a telemarketer." (R. 292).  Examination revealed positive straight leg test on the right, with spasms and pain in the neck and back.  Diagnosis was lumbar strain, with history of chronic back pain, and cervical muscle spasm.  Plan was rest for two days, and then physical therapy and medications (R. 293).  Plaintiff was directed to follow up with his physician.

On September 12, 2003, Plaintiff presented to Ralph Zwolinski, M.D. (R. 278-79).  On neurologic examination, Plaintiff was alert, oriented, with recent and remote memory intact and mood and affect appropriate (R. 279).  Strength testing was 5/5 in bilateral lower extremities, and sensation was decreased only on the right side.  Plaintiff had sciatic notch tenderness on the right side, positive straight leg raising test on the right leg at 60 degrees, pain over the right posterior iliac crest with some spasm and 70 degrees of forward flexion.  *Id.*  Assessment was sciatica with degenerative disc disease.

Plan was for Plaintiff to undergo EMG and nerve conduction studies, and Plaintiff was to be placed in physical therapy.  It was noted that Plaintiff could continue to work as a customer service representative (R. 280).

On September 22, 2003, Plaintiff saw Steve Toscano, a physician's assistant with Dr. Zwolinski (R. 277).  It was noted that the studies were completed and showed a positive S1 lumbar radiculopathy.  No change was noted in Plaintiff's symptoms.  Impression was S1 radiculopathy, spinal enthesopathy and neuroforaminal stenosis of L5-S1.  Plan was to continue with pain

medications, participate in low back exercises, and undertake epidural injections. *Id.*   There is no notation reflecting any change in work status.

Plaintiff returned on October 02, 2003, for injections (R. 287).  No changes were noted on examination.  Plaintiff was directed to start physical therapy (R. 288).

Plaintiff returned on November 3, 2003, noting improvement in his neck spasm and pain, but not much difference in his low back complaints (R. 285).  On examination, however, his gait was normal, with good toe, heel and tandem walking, and normal range of motion of the back was noted. Muscle tone was normal bilaterally, heel to shin testing was done well, and fine motor coordination was normal.  Straight leg raise test was negative bilaterally and reflexes were normal.  Strength was 5/5 in all muscle groups.  Sensation was decreased below the right knee in the distribution of the sciatic nerve. *Id.*  Assessment was lumbar radiculopathy.  Plan was to continue on the medications, and return in six weeks.  No change in work status was noted.

Plaintiff returned on December 16, 2003, complaining of numbness and burning in the right lower extremity (R. 283).  Plaintiff reported that the injections had given him one week of pain relief. Examination showed a positive hyperextension test with ninety degrees of forward flexion.  A positive sitting root test on the right and straight leg raising test on the right were noted, as was positive sciatic notch tenderness.  Deep tendon reflexes were absent within the right ankle.  Strength testing was 5/5 in the bilateral lower extremities.  Another injection was given, and plan was to continue with medication and the exercises. (R. 284).

On January 13, 2004, Plaintiff returned to Dr. Zwolinski's office for follow up, rating his pain a 7 out of 10 (R. 281).  Examination revealed symmetrical reflexes and normal strength testing, but a positive straight leg raising test to 40 degrees on right and positive tension signs, sitting root test and

-8-

hyperextension test. Impression was right sided sciatica with spinal enthesopathy.  Plan was to continue the medications, and Plaintiff was referred to a pain management anesthesiologist for possible transforaminal injections (R. 282).

On March 15, 2004, Dr. Zwolinski completed a physical residual functional capacity questionnaire in which he stated that Plaintiff had a "HNP L5-S1a"[3] (R. 315).  The doctor found Plaintiff to be incapable of even low stress jobs, felt Plaintiff could not walk for even one block, could only sit for 5 minutes at a time, could stand for 5 minutes at a time, and was unable to work (R. 316 and 317).  Plaintiff could never lift any weight at all, could only rarely look down or turn his head right or left, and could never twist, bend, crouch, or climb (R. 318).  Dr. Zwolinski opined that these restrictions were in place on or before September 22, 2003 (R. 319).

Plaintiff appeared at his hearing and testified as to his pain and limitations.  He stated that he has pain "all day." (R. 339).  He uses a cane, testified that he can walk without it, but would rather not (R. 339).  As for activities, Plaintiff stated that he washes dishes, sweeps, takes the clothes off the line, and can grocery shop (R. 341).  He does his back exercises at home and watches TV.  *Id.* Plaintiff stated that he could lift 6 to 7 pounds; could stand for 30 minutes; walk for 15-20 minutes; and sit for 10-15 minutes (R. 344).   He stated that he has a drivers license and could drive comfortably for 30 minutes (R. 351).

No vocational expert testified at the hearing.

---

[3]This is believed to be a shorthand expression of a "herniatied nucleous pulposus" or a herniated disc.

The ALJ determined that Plaintiff has degenerative disc disease of the lumbar spine with lumber radiculopathy, but his impairment did not meet or equal the Listings (R. 24).[4]  The ALJ discredited Plaintiff's allegations of limitations and the opinion of Plaintiff's physician, and found that Plaintiff retained the residual functional capacity to occasionally lift/carry up to 10 pounds, walk/stand for about two hours of an 8 hour workday, sit for about six hours per day, and occasionally stoop, crouch and crawl.  Further, the ALJ found that Plaintiff's capacity for sedentary work was intact and not compromised by any significant non-exertional limitations.  Applying the Medical-Vocational Rules ("the grids"), the ALJ determined that Plaintiff was not disabled.  *Id.*

### THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

---

[4]The ALJ also determined that Plaintiff's depression was not severe, within the meaning of the regulations. Plaintiff does not challenge this finding in this appeal.

reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff presents four contentions in his brief: 1) whether the ALJ erred by failing to utilize a vocational expert; 2) whether the ALJ improperly discredited the opinion of the treating physician; 3) whether the ALJ failed to properly evaluate Plaintiff's allegations of pain; and 4) whether the ALJ erred in assessing Plaintiff's credibility.  Because issues 1, 3 and 4 are intertwined, we begin with issue 2.

### Treating Physicians

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See*

*Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Applied here, the issue is whether the ALJ's discrediting of the opinion of Dr. Zwolinski is supported by substantial evidence. In his decision, the ALJ notes that the physical capacity evaluation provided by Dr. Zwolinski was "not supported by the record and is apparently based primarily on subjective complaints of pain from the claimant." (R. 22). The ALJ felt that the assessment was "over-restrictive" and noted that it was inconsistent with Plaintiff's self-described activities. Substantial evidence supports this finding.

As detailed in the physical capacity evaluation, Dr. Zwolinski's opinion that Plaintiff cannot work is based on a diagnosis of a herniated disc at L5-S1, supported by objective findings of the MRI,

a positive "SRT,"[5] a positive straight leg raising test, and a positive finding of sciatic notch tenderness (R. 315). Dr. Zwolinski's treatment notes of September 12, 2003, however, noted the MRI findings, positive straight leg test and sciatic notch tenderness findings, but concluded that Plaintiff could continue to work as a customer service representative (R. 279-80). Thus, Dr. Zwolinski's opinion that Plaintiff was severely restricted and could do no work as of September 22, 2003, is inconsistent with his September 12 opinion that Plaintiff could continue to work, based on the same articulated findings. Moreover, the restrictions in the physical capacity evaluation are not found in the treatment notes, and are contradicted by Plaintiff's own testimony regarding his activities and his limitations.[6] No other doctor has placed permanent limitations on Plaintiff's activities, nor has any other physician found the degree of restriction belatedly noted by Dr. Zwolinski.[7] As noted above, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other *consistent* evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (emphasis added). Here, the ALJ's conclusion regarding discrediting the physical capacities evaluation is sufficiently supported and must therefore be upheld.

Similarly, the ALJ's residual functional capacity finding is adequately supported by substantial evidence. As summarized above, the ALJ's finding that Plaintiff is capable of sedentary work is

---

[5] Believed to be a sitting root test. This is simply a sitting straight leg raise test.

[6] Plaintiff testified that he was capable of lifting, standing, walking and driving (while seated, of course) well in excess of the limitations included in the physical capacities evaluation. Moreover, activities such as driving involve the ability to turn one's head; a task Dr. Zwolinski opined Plaintiff could only "rarely" do. (R. 318).

[7] As noted by the ALJ and above, Dr. Gillespy concluded that Plaintiff could lift up to forty pounds, and needed no further workup. Dr. Hatch noted that Plaintiff's pain was out of proportion to the physical exam and diagnostic studies. None of the emergency department doctors noted significant functional limitations.

supported by the findings of Dr. Gillespy (who found Plaintiff capable of lifting 40 pounds); two state agency physicians (who found Plaintiff capable of light work); and the findings of Dr. Hatch (who noted chronic low back pain, out of proportion to the physical exam and diagnostic studies).

### When Vocational Expert Is Necessary

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish

-14-

whether the claimant can perform work which exists in the national economy.  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  *Foote*, 67 F.3d at 1559.

Here, Plaintiff asserts that the ALJ erred in not appointing a vocational expert, as Plaintiff suffers from pain, a non-exertional impairment.  *Foote*, 67 F.3d at 1559.

In evaluating allegations of pain, the ALJ must consider all of a claimant's statements about his pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Applied here, Plaintiff alleges disabling pain and limitations, resulting from his back condition.  As the ALJ found that Plaintiff has degenerative disc disease, with radiculopathy, Plaintiff has established the first prong of this standard.  The ALJ determined, however, that Plaintiff had not presented objective medical evidence confirming the severity of the pain or that the back condition

is of such severity that it can be reasonably expected to give rise to the alleged pain.[8] At issue is whether this finding is supported by substantial evidence.

Plaintiff contends that the finding is not supported in that Plaintiff suffered from severe pain symptoms that were consistent with the medical evidence, continually complained of pain to his physicians and "at no time did his treating physicians indicate that the pain was not credible or expected." (Doc. No. 17 at 11).   The record, however, indicates that, in fact, *two* of Plaintiff's physicians were skeptical of Plaintiff's allegations.  Despite Plaintiff's allegations of disabling pain, Dr. Gillespy found no reasonable cause: "I do not see anything to suggest a significant work injury here." (R. 167).  Dr. Gillespy noted that Plaintiff's symptoms were no different from his complaints in 2000, and that Plaintiff was at maximum medical improvement, with no permanent impairment (R. 167-8).  Dr. Gillespy concluded that Plaintiff could lift up to forty pounds, and that Plaintiff "needs no further follow-up care for his lumbar spine condition."   Moreover, as noted above, Dr. Hatch found Plaintiff's allegations of back pain to be out of proportion to the objective evidence; noting the unclear etiology of the pain.  Indeed, Dr. Hatch ordered physical therapy, emphasizing work towards functional goals "and not necessarily to decrease pain." (R. 260).

With respect to Plaintiff's credibility, when an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting

_____

[8]The ALJ stated that Plaintiff had "some ongoing back pain and lumbar radiculopathy that is consistent with his diagnosis of degenerative disc disease of the lumbar spine, but his subjective complaints are somewhat exaggerated and disproportionate to the diagnostic and clinical findings." (R. 22).

-16-

evidence in the record.  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).  Here, the ALJ found Plaintiff's allegations to be not totally credible in that they were exaggerated and disproportionate to the diagnostic and clinical findings (R. 22).  The ALJ noted discrepancies between the allegations of pain and the clinical record, and compared the allegations of limitations to Plaintiff's admitted activities. *Id.*  The Court finds the credibility finding to be adequately supported.

As noted above, there is conflicting evidence in the record regarding Plaintiff's condition. While Plaintiff relies on the most recent MRI, which showed degenerative disc changes, numerous other X-rays and MRI's were mostly unremarkable or showed only minor or mild changes.  Two physicians found the complaints to be inconsistent with the objective evidence (see above) and even the treatment notes of Dr. Zwolinski indicate that Plaintiff's functionality was not as limited as claimed.  *See* R. 285:  November 3, 2003 treatment notes (gait was normal, with good toe, heel and tandem walking, and normal range of motion of the back; muscle tone was normal bilaterally, heel to shin testing was done well, and fine motor coordination was normal; straight leg raise test was negative bilaterally, reflexes were normal; strength was 5/5 in all muscle groups; sensation was decreased below the right knee in the distribution of the sciatic nerve).

As for Plaintiff's activities, the record includes evidence as to his ability to drive and perform light housework (washing dishes, taking clothes off the line, sweeping), as well as grocery shopping, playing video games and watching television.  Plaintiff also performs the home exercise program prescribed by his doctors.  The ALJ found that these activities, in aggregate, are inconsistent with the level of disabling pain Plaintiff alleges.  This conclusion is supported by substantial evidence.  While

participation in everyday activities of daily living does not disqualify a claimant from disability, *Lewis v. Callahan,* 125 F. 3d 1436, 1441 (11th Cir. 1997), here, the ALJ cites to these activities in the accepted context of support for his credibility finding.  *See Moore v. Barnhart,* 405 F. 3d 1208, 1212-13 (11th Cir. 2005) (the ALJ's determination that a claimant retained sufficient residual functional capacity to perform some of her past relevant work was supported by substantial evidence, which included findings of an inconsistency between her daily activities and her claims of impairment, but reversing on an unrelated issue.)   Thus, the ALJ's finding on credibility is adequately supported and must therefore be upheld.

In the absence of a finding that a claimant is unable to perform a full range of work at a given residual functional level or a finding that a claimant has a non-exertional impairment that significantly limits basic work skills, reliance on the grids is appropriate.   Here, the ALJ made a specific finding that Plaintiff was able to perform "substantially all" of the full range of sedentary work, and that his capacity for sedentary work was "substantially intact and has not been compromised by any significant nonexertional limitations." (R. 24).  This finding is supported by the substantial evidence discussed above.  To the extent the record contains conflicting evidence, it is not the task of the Court to re-weigh the evidence, or substitute our judgment for the judgment of the Commissioner, even if the evidence preponderates against the decision.  *Moore,* 405 F. 3d at 1213, quoting *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

### CONCLUSION

As the decision was made in accordance with proper legal standards and is supported by substantial evidence, it is **respectfully recommended** that the decision of the Commissioner be

**AFFIRMED.**   Should this recommendation be adopted by the District Court, the Clerk is directed to enter judgment accordingly, terminate all pending matters and close this case.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 24, 2005.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party